42

March 25th 2026

F I L E D

MAR 31 2026

CLERK'S OFFICE
DETROIT

Dear Clerk of the Court:

Enclosed for filing in Case No. 2:19-cv-13788
(Moses R. Kirschke v. Corizon Health Inc. et al.)
please find (1) Original with exhibits A-F for
Judge Anthony P. Patti & (1) Copy (without
exhibits) for the Clerk's Office... of Plaintiff's
1 Page Letter regarding recent "Negative Extra-
ordinary Unprecedented Circumstances..." Necess-
itating the Appointment of <u>Pro Bono</u> Counsel.
With a Certificate of Service...

Sincerely,

Moses R. Kirschke #334295

POOR QUALITY ORIGINAL

_Judge Patti's -_
_Copy_
_w. Exhibits_

Moses R. Kirschke #384285
Newberry Correctional Facility
13747 E. County Road 428
Newberry, Michigan 49868

March 25th 2026

Office of the Clerk for the
U.S. Eastern District Court of Michigan
231 W. Lafayette Blvd., Room 564
Detroit, Michigan 48226

Hon. Denise Page Hood

Hon. Mag. Anthony P. Patti

RE: Moses R. Kirschke v. Corizon Health Inc., et al., Case No. 2:19-cv-13788, & "New" Negative Circumstances

/Extraordinary Unprecedented Circumstances Necessitating the Appointment of Pro Bono Counsel............

Dear Clerk of the Court: Plaintiff respectfully motions the Court in the above case for Counsel due to "new" negative extraordinary unprecedented circumstances. Where after attempting to settle part of the case with Corizon & Corizon Defendants, releasing them from the case [ECF No. 189], they have reneged on the bankruptcy settlement plan. (See Ex. A: Copy of 3-13-2026 Dickinson & Wright PLLC Letter). And the settlement plan & injunction has been terminated. By the U.S. Southern-North Bankruptcy Court of Texas. (See Notice attached to 3-13-2026 DW PLLC Letter)..Where now Plaintiff has approximately "2 months & 1 week--June 3rd 2026" to re-instate Corizon and the released defendants. Back into the case. Add present/former employees/officers of Corizon. And Corizon's "new" corporations: Yes Care & CHS TX as successor entities. And new claims. Such as fraudulent transfer & avoidance action claims under state law. (See Ex. B: P. 13 of Bank. Settlement Plan). Which is going to require extensive discovery, for discovery to be re-opened, and extended. For discovery of the identities of "new" defendants. And Counsel. Because Plaintiff is incarcerated. And defendants are in other states. And Dickinson & Wright is not going to help Plaintiff with the matters. (See P. 2 of 3-13-2026 Dickinson & Wright PLLC Letter).

And Plaintiff has "no experience" and the skills necessary to litigate and/or bring novel "new" state law claims in the case. In federal court. Relating to bankruptcy/state law & these extraoridinary circumstances. Now before the Court. Not to mention also "re-opening discovery" for Corizon & and released defendants. And following up discovery with them. Which is another matter. Where in addition to that, multiple discovery requests were left hanging in the balance involving Corizon & the released defendants due to the bankruptcy Stay. (See ECF No.'s 128, 130, 139, 143, & 150). And will need to be ruled on by the Court. And discovery conducted on the "new" defendants. Once their identities are revealed through discovery. And further, Monell claims are complicated substantially fact-labor-intensive and extensive evidence gathering-based claims. Warranting the appointment of Counsel.

And Plaintiff has some form of "Autism & ADHD disorder." And has a hard time conveying & organizing information. (It takes 2 hours sometimes just to arrange & organize 2 paragraphs clearly). And barely passed the 8th Grade. (See Ex. C: Pl.'s Aff. of Fact). And Plaintiff also suffers from a condition known as "Postherpetic Neuralgia." Which affects his concentration. And was diagnosed for in 2016. And Plaintiff still suffers from today. (And is not being given any treatment for). (See Ex. D: Pl.'s 2-9-2016 & 3-4-2016 Medical Records; Ex. E: Printout Information on Postherpetic Neuralgia; & Ex. F: Pl.'s 11-6-2014, 10-15-2014, & 7-1-2014 Mental Health Records). Which is at issue and Plaintiff was denied treatment for in this case by Corizon & the released defendants. (See ¶¶'s 338, 339, 340, 341, 342, 356, 360, 361, 362, 363, 364, 365, 366, 367, 368, 369, & 370 of Pl.'s Ver. Compl: at ECF No. 85). Which due to the unprecedented and "new" negative extraordinarey circumstances, difficulties and substantial challenges Plaintiff faces... including his mental disabilities resulting from his scalp/medical condition & autism and/or ADHD disorder, Plaintiff respectfulyy asks this Court to consider and find Pro Bono Counsel to represent him in the Case in accordance with the Criminal Justice Act & Eastern District Roster for Indigent civil rights claimants.

Plaintiff further declares that the attached exhibits are true and accurate copies under the penalty of perjury. 28 U.S.C. § 1746.

Sincerely/Respectfully Submitted

Moses R. Kirschke #384285

EXHIBIT A



2600 WEST BIG BEAVER, SUITE 300
TROY, MI 48084
TELEPHONE: 248-631-2013
FACSIMILE: 844-670-6009
http://www.dickinsonwright.com

March 13, 2026

**_SENT VIA FEDEX OVERNIGHT (TRACKING ORDERED)_**

Moses R. Kirschke, #384285
Newbury Correctional Facility
13747 E. County Road 428
Newbury, Michigan 49868

Re:    _Bankruptcy Court Notice of Settlement Parties' Default & Termination of Channeling Injunction_

Dear Mr. Kirschke,

Please be advised that we received the enclosed Notice from the U.S. Bankruptcy Court for the Southern District of Texas. The Notice indicates that the Settlement Parties have failed to make the Settlement Payments necessary to fund the Trusts and have failed to cure the Settlement Payment Defaults.

Because of the Defaults, the PI/WD Trust (of which you are a claimholder) and the GUC Trust are only partially funded. I also spoke with the Trustee, Michael Zimmerman, this week. Mr. Zimmerman does not believe the Settlement Parties intend to fully fund the Trusts, and indeed, the Trusts anticipating bringing claims against the Settlement Parties.

Notwithstanding, because the Settlement Parties failed to fund the Trusts, the Channeling Injunction is terminated – meaning, you can now pursue claims against Tehum Care Services, Inc., its related entities, its predecessor or successor entities, and the present/former employees of same (_i.e._, the formerly "Released Parties" under the First Modified Joint Chapter 11 Plan [the "Bankruptcy Plan"]).

In other words, relative to your ongoing lawsuit,[1] you may inform the U.S. District Court for the Eastern District of Michigan that the Defendants, which were previously released under the Bankruptcy Plan and which you stipulated to dismiss [ECF No. 189],

---

[1] _Kirschke v. Corizon Health, Inc., et, al_, Case No. 2:19-cv-13788 (EDMI)

Moses R. Kirschke, #384285                         DICKINSON WRIGHT PLLC
March 13, 2026
Page 2

may be brought back into the lawsuit because the Channeling Injunction is no longer in effect. For your ease of reference, I am also enclosing a copy of ECF No. 189.

Notably, the Notice makes clear that all holders of channeled claims, such as yourself, have ninety (90) days from March 5, 2026, or June 3, 2026 to commence causes of action against the formerly Released Parties. It further states:

> Pursuant to the Confirmation Order and the Plan, the Channeling Injunction has terminated and all **Statute of Limitations** for all Claims and Causes of Action against the Released Parties held by the Debtor, the Estate, the PI/WD Trust, the GUC Trust, and Holders of Channeled Claims shall be **tolled** and **extended** to the first Business Day that is ninety (90) days after the termination of the Channeling Injunction, or **June 3, 2026**.

We are promptly informing you of this development in line with our professional obligations. However, pursuant to the terms of our Limited Scope Engagement Agreement (the "Agreement") with you, our Firm is unable to assist you in pursuing or re-instating claims against any formerly Released Parties. Indeed, the scope of our engagement remains as stated in the Agreement.

As this development relates to the tiering assessments to be made by the Trustee and the Trust's ability to make any disbursements, Mr. Zimmerman shared additional information with me. The Trust will still be issuing letters containing tiering assessments, which we will receive in approx. one (1) month. However, because the Trusts are not fully funded, the Trustee is no longer able to disburse the planned amounts.

Additionally, because the Trust is no longer the most reliable source of recovery, Mr. Zimmerman emphasized to me that he would be willing to review a settlement proposal from you – with such proposal containing a carve-out releasing *only* the Trust from liability and still permitting you to pursue claims against the formerly Released Parties. It is our impression from Mr. Zimmerman that your claim is likely to be assessed at an amount less than $5,000, and because of that concern, it is our recommendation that our office prepare a settlement proposal in the amount of $5,000 and submit same to Mr. Zimmerman *before* we receive your tiering assessment letter.

We are happy to discuss my call with Mr. Zimmerman, the above recommendation, and your options with you further. I and my colleague, Delaney J.

Moses R. Kirschke, #384285                                    D I C K I N S O N   W R I G H T   P L L C
March 13, 2026
Page 3

Sullivan, are in the process of scheduling a video visit with you to discuss the impact of the Settlement Parties' default on the Trust disbursement process at length and to answer any questions you may have.

We are presently aiming to schedule a virtual meeting with you on **March 23, 2026**. If anything changes or if any relevant developments occur in the interim, we will get additional correspondence to you.

Sincerely,

*Aleanna B. Siacon*

Aleanna B. Siacon
asiacon@dickinsonwright.com
248-631-2013

ABS
Enclosures

CC:   Joseph A. Vacante *via email only* at jvacante@dickinsonwright.com
      Delaney J. Sullivan *via email only* at dsullivan@dickinsonwright.com
      Brittany L. Romig *via email only* at bromig@dickinsonwright.com
      Elle C. Kersten *via email only* at ekersten@dickinsonwright.com
      Jared A. Christensen *via email only* at jchristensen@dickinsonwright.com

4908-8677-3655 v1 [103741-2]

Docket #2617 Date Filed: 03/04/2026

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| TEHUM CARE SERVICES, INC.[1] | Case No. 23-90086 (CML) |
| Debtor. | |

### NOTICE OF FAILURE TO CURE SETTLEMENT PAYMENT DEFAULT; AUTOMATIC TERMINATION OF CHANNELING INJUNCTION; AND DEADLINE TO COMMENCE CAUSES OF ACTION AGAINST RELEASED PARTIES

The PI/WD Trust and the GUC Trust (together, the "Trusts") established pursuant to the *Order Confirming the First Modified Joint Chapter 11 Plan of Reorganization of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor* (Dkt. No. 2014) (the "Confirmation Order") and the *First Modified Joint Chapter 11 Plan of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor* (Dkt. No. 2014 at Ex. B) (the "Plan")[2] hereby provide notice of the failure of the Settlement Parties to cure the Settlement Payment Defaults under Article IV.B.2 of the Plan (the "Settlement Payment Default Cure Notice").

On February 25, 2026, the Trusts filed the *Notice of Settlement Payment Default and Settlement Payment Default Cure Notice* [Dkt. No. 2612] (the "Notice") and provided written notice to the Settlement Parties' counsel in accordance with Article IV.B.2 of the Plan, that the Settlement Parties have failed to make the following Installment Settlement Payment within the applicable payment date, within a "grace period" of five (5) Business Days from such date: Installment Settlement Payment due on February 17, 2026 in the amount of $2,012,022.75. *See* Dkt. No. 1955-4; Dkt. No. 2602-1.

Pursuant to the Notice and the Plan, the Settlement Parties were required to cure the Settlement Payment Default within five (5) Business Days of the filing of the Notice, or Wednesday, March 4, 2026 (the "Settlement Payment Cure Period"). The Settlement Parties did not make the missed Installment Settlement Payment within the Settlement Payment Cure Period.

**PLEASE TAKE NOTICE THAT, AS OF MARCH 5, 2026, ALL PLAN INJUNCTIONS, STAYS, OR RELEASES PROVIDED IN FAVOR OF THE RELEASED PARTIES THAT WERE IN EFFECT UNDER THE PLAN ARE DEEMED TERMINATED AND VOID AND THE CHANNELING INJUNCTION AND ALL PROTECTIONS AFFORDED TO THE RELEASED PARTIES SET FORTH IN ARTICLE IX.I OF THE**

---

[1] The last four digits of the Debtor's federal tax identification number is 8853. The Debtor's service address is: 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Plan.

CORE/3533662.0002/239328089.2

2390086260304000000000001

**PLAN HAVE TERMINATED AUTOMATICALLY. SEE PLAN AT ART. IV.B.2 & ART. IX.I.5.**

**PLEASE TAKE FURTHER NOTICE THAT THE ESTATE PARTY SETTLEMENT IS NO LONGER EFFECTIVE AND ALL BENEFICIARIES OF THE TRUSTS, INCLUDING WITHOUT LIMITATION, ALL HOLDERS OF CHANNELED CLAIMS HAVE NINETY (90) DAYS FROM MARCH 5, 2026, OR JUNE 3, 2026 TO COMMENCE CAUSES OF ACTION AGAINST THE RELEASED PARTIES. SEE PLAN AT ART. IX.I.6.**

Pursuant to the Confirmation Order and the Plan, the Channeling Injunction has terminated and all **Statute of Limitations** for all Claims and Causes of Action against the Released Parties held by the Debtor, the Estate, the PI/WD Trust, the GUC Trust, and Holders of Channeled Claims shall be **tolled** and **extended** to the first Business Day that is ninety (90) days after the termination of the Channeling Injunction, or **June 3, 2026**.

The Trusts will commence litigation in respect of the Retained Causes of Action, which include Causes of Action owned, held, or capable of being asserted by, under, through or on behalf of the Debtor or its Estate, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction, including actions that arise out of or are based on breach of contract, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty or obedience, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Debtor or its Estate, and all other actions that constitute property of the Estate under section 541 of the Bankruptcy Code that are or may be pursued by a representative of the Estate, including pursuant to section 323 of the Bankruptcy Code, and actions, including Avoidance Actions under chapter 5 of the Bankruptcy Code, seeking relief in the form of damages (actual and punitive), imposition of a constructive trust, turnover of property, restitution, and declaratory relief with respect thereto or otherwise. For the avoidance of doubt, the Retained Causes of Action include the Released Estate Causes of Action under the Plan.

The Trusts will send a copy of this Notice to all Trust Beneficiaries and file a Certificate of Service with the Court.

Dated: March 5, 2026

Respectfully submitted,

*/s/ Nicholas Zluticky*
Nicholas Zluticky (SD TX Bar No. 3846893)
Zachary Hemenway (SD TX Bar No. 3856801)
**STINSON LLP**
1201 Walnut, Suite 2900
Kansas City, MO 64106
Telephone: (816) 842-8600
Facsimile: (816) 691-3495
Email: nicholas.zluticky@stinson.com
        zachary.hemenway@stinson.com
*Co-Counsel to the PI/WD Trust and the GUC Trust*

2

/s/ Eric R. Goodman
David J. Molton (*pro hac vice*)
Eric R. Goodman (*pro hac vice*)
D. Cameron Moxley (*pro hac vice*)
**BROWN RUDNICK LLP**
Seven Times Square
New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
Email: dmolton@brownrudnick.com
      egoodman@brownrudnick.com
      cmoxley@brownrudnick.com

*Co-Counsel to the PI/WD Trust and the GUC Trust*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on the 5th day of March 2026, he caused a true and correct copy of the foregoing notice to be served on all parties who have subscribed for electronic notice via the Court's CM-ECF Notification System.

/s/ Nicholas Zluticky
Nicholas Zluticky

3

CORE/3533662.0002/239328089.2

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

MOSES R. KIRSCHKE,

                    *Plaintiff,*                    District Judge Denise Page Hood
                                                    Magistrate Judge Anthony P. Patti

        v.
                                                    Case No. 2:19-cv-13788

CORIZON HEALTH, INC., et al,

                    *Defendants.*

| | |
|---|---|
| Dickinson Wright, PLLC | Foley, Baron, Metzger & Juip, PLLC |
| Alenna B. Siacon (P86300) | Randall A. Juip (P58538) |
| Brittany L. Romig (P87734) | Brian J. Richtarcik (P49390) |
| *Attorneys for Plaintiff* | *Attorneys for Defendants Dr.* |
| 500 Woodward Ave., Suite 400 | *Bergman, Dr. Stacy, Dr. Abdellatif,* |
| Detroit, MI 48226 | *and NP Hill* |
| (313) 223-3500 | 38777 Six Mile Road, Suite 300 |
| asiacon@dickinson-wright.com | Livonia, MI  48152 |
| bromig@dickinsonwright.com | (734) 742-1800 |
| | rjuip@fbmjlaw.com |
| Hackney Odlum & Dardas | brichtarcik@fbmjlaw.com |
| Thomas G. Hackney (P81283) | |
| Connor A. McLaughlin (P83229) | Adam P Sadowski (P73864) |
| *Attorneys for Defendants Dr. Coleman,* | Assistant Attorney General |
| *Dr. Bomber, and Dr. Papendick* | *Attorney for Defendants Issac,* |
| 10850 E. Traverse Hwy, Suite 4440 | *Krucho-Copley, Smith, Heering,* |
| Traverse City, MI 49684 | *Piatkowski, and Nixon,* |
| (231) 642-5026 | 525 W. Ottawa Street |
| thackney@hodlawyers.com | Lansing, MI 48933 |
| cmclaughlin@hodlawyers.com | Sadowskia1@michigan.gov |

## STIPULATION OF VOLUNTARY DISMISSAL
## OF CLAIMS AGAINST DEFENDANTS
## <u>RELEASED UNDER THE BANKRUPTCY PLAN</u>

THE PARTIES, Moses R. Kirschke ("Plaintiff"), and Steven Bergman, D.O. (the Regional Medical Director); Badawi Abdellatif, M.D; Rickey Coleman, D.O.; E'Coe Hill, N.P.; Sylvie Stacy, M.D.; Keith Papendick, M.D.; and Jeffrey Bomber, D.O. (collectively, the "Released Defendants"), through their undersigned counsel and pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii), hereby give notice of their stipulation to the voluntary dismissal of this case against the Released Defendants, which for purposes of this stipulation also includes Corizon Health, Inc.

Each of the Released Defendants are "Released Parties" under the First Modified Joint Chapter 11 Plan (the "Bankruptcy Plan"), which was passed and made effective on March 31, 2025 relative to the Bankruptcy Court proceedings pertaining to Corizon Health, Inc. See *Chapter 11 Bankruptcy of Tehum Care Services, Inc. d/b/a Corizon Health* (U.S. Bankruptcy Court for the Southern District of Texas Case No. 23-90086). Accordingly, because Plaintiff *did not* opt out of the Bankruptcy Plan, and indeed, is a Consenting Personal Injury/Wrongful Death Claimant, Plaintiff is subject to a "Channeling Injunction" and cannot continue his lawsuit against the Released Defendants so long as the Channeling Injunction remains in effect.

Where Plaintiff has not previously dismissed any federal or state court action based on or including the same underlying claims, this *shall not* constitute a notice

1

of dismissal that operates as an adjudication on the merits. See Fed. R. Civ. P. 41(a)(1)(B).

Respectfully submitted,

/S/ *Aleanna B. Siacon*
DICKINSON WRIGHT PLLC
Aleanna B. Siacon (P86300)
Brittany L. Romig (P87734)
2600 W. Big Beaver Rd, Ste. 300
Troy, MI 48084
(248) 433-7200
(844) 670-6009 (fax)
asiacon@dickinsonwright.com
bromig@dickinsonwright.com
*Attorneys for Plaintiff Moses Kirschke*

/S/ *Brian J. Richtarcik*
FOLEY BARON METZGER & JUIP, PLLC
Randall A. Juip (P58538)
Brian J. Richtarcik (P49390)
38777 Six Mile Road, Ste. 300
Livonia, MI 48152
(734) 742-1800
(734) 521-2379 (fax)
rajuip@fbmjalaw.com
brichtarcik@fbmjlaw.com
crodey@fbmjlaw.com
*Attorneys for Defendants Dr. Badawi Abdellatif, Dr. Bergman, E' Coe Hill, and Dr. Stacy*

/S/ *Connor A. McLaughlin*
HACKNEY ODLUM & DARDAS
Thomas G. Hackney (P81283)
Connor A. McLaughlin (P83229)
Bayview Professional Center
10850 E. Traverse Hwy, Ste. 4440
Traverse City, MI 49684
(231) 642-5026
(231) 642-5057 (fax)
thackney@hodlawyers.com
cmclaughlin@hodlawyers.com
*Attorneys for Defendants Dr. Bomber, Dr. Coleman, and Dr. Keith Papendick*

Dated: June 18, 2025.

2

Case 2:19-cv-13788-DPH-APP  ECF No. 189, PageID.3166  Filed 06/23/25  Page 4 of 4

## ORDER DISMISSING CLAIMS AGAINST DEFENDANTS RELEASED UNDER THE BANKRUPTCY PLAN

Based on the Joint Stipulation of Voluntary Dismissal Of Claims Against Defendants Released Under The Bankruptcy Plan, including Moses R. Kirschke ("Plaintiff") and Defendants Steven Bergman, D.O. (the Regional Medical Director); Badawi Abdellatif, M.D; Rickey Coleman, D.O.; E'Coe Hill, N.P.; Sylvie Stacy, M.D.; Keith Papendick, M.D.; and Jeffrey Bomber, D.O.; also including Corizon Health, Inc., and the Court being fully advised:

**IT IS HEREBY ORDERED** that the proceeding against Defendants, Steven Bergman, D.O. (the Regional Medical Director); Badawi Abdellatif, M.D; Rickey Coleman, D.O.; E'Coe Hill, N.P.; Sylvie Stacy, M.D.; Keith Papendick, M.D.; and Jeffrey Bomber, D.O.; and Corizon Health, Inc., only, is Dismissed without prejudice.

Dated: June 23, 2025

_____
Anthony P. Patti
United States Magistrate Judge.

3

EXHIBIT B

- **Fraudulent Transfer Claims**. The TCC agrees with the UCC the Estate could bring claims for fraudulent transfer based on the Divisional Merger. The TCC believes that the Divisional Merger can be unwound as a fraudulent transfer. State law allows for avoidance of actual fraudulent transfers made on or within 4 years before the petition date. *See* Tex. Bus. & Comm. Code § 24.005. The Divisional Merger occurred within the past 4 years, and the TCC asserts that the Divisional Merger was done with the actual intent to hinder, delay, and defraud creditors. The Divisional Merger can also be challenged as a constructive fraud. *Id.* at § 24.005(a)(2). The Divisional Merger allocated the Debtor—an entity with no business operations—with little besides liabilities. The Debtor was stripped of its assets. The TCC's position is that Texas divisive merger statute does not sanction fraud. The Texas statute does not "abridge any right or rights of any creditor under existing law." Tex. Bus. Org. Code § 10.901. When a party undertakes a "divisional merger" that is fraudulent, creditors can assert an array of rights and remedies under state law, including the right to challenge the transaction as a fraudulent transfer. At least one court that has considered the application of fraudulent transfer law to a divisional merger has held that a divisional merger conducted under Texas law can be avoided as a fraudulent transfer. *See, e.g., Official Comm. of Asbestos Personal Injury Claimants v. DBMP LLC*, No. 21-03023-JCW (Bankr. W.D.N.C. July 7, 2022) (holding that it would be "contrary to all Anglo-American notions of fraudulent conveyance law" for the victims of a fraudulent divisional merger conducted under Texas law to have "no recourse" against the entity that received the operating assets).

- **Doctrine of Successor Liability**. The TCC asserts that YesCare, CHS TX, and/or their affiliates are liable as the successor to Corizon Health, Inc. Under state law, successor liability is not a cause of action. Rather, successor liability is an equitable doctrine or a theory of liability that transfers liability for a claim from a predecessor to a successor when certain factors are present. A successor may become liable for the debts of the predecessor when the transaction amounts to a consolidation or de facto merger, the transaction is fraudulent or done with the intent to escape liability, or the purchaser is a mere continuation of the seller. The TCC asserts that YesCare is a mere continuation of Corizon Health, Inc. and that its business operations are identical. The TCC asserts that the Divisional Merger was fraudulent and was done with the intent to escape liability, and that there was a continuity of shareholders, normal business operations continued without interruption, and the Debtor commenced a bankruptcy proceeding shortly after its creation. The doctrine of successor liability imposes on YesCare all the Debtor's liabilities. All claimants of the Debtor may have a path to recover in full on account of their claims in the Civil Justice System. The TCC believes these issues have already been litigated, with at least one Court holding that CHS TX may be liable as Corizon's successor. *See Kelly v. Corizon Health Inc.*, No. 2:22-cv-10589, 2022 WL 16575763 (E.D. Mich. Nov. 1, 2022) (adding CHS TX, Inc. [NewCo] as a defendant in a prepetition action and finding "[c]onsidering the totality of the circumstances here, I find that CHS TX is a mere continuation of pre-division Corizon . . . . Evidently, CHS TX picked up right where Corizon left off. Indeed, CHS TX holds itself out to clients as Corizon's successor.").

- **Alter Ego / Veil Piercing**. The TCC asserts that Debtor's beneficial owners are also liable as the Debtor's alter ego. Alter ego and veil piercing are also not causes of action. They are also equitable doctrines or legal remedies. Alter ego and veil piercing theories do not create new causes of action. Rather, they impose liability on the company's owner when certain factors are present. These factors include: the parent and subsidiary have common stock ownership, common directors or officers, the parent and subsidiary have common business departments, the parent and subsidiary file consolidated financial statements, the parent finances the subsidiary, the parent caused the incorporation of the subsidiary, the subsidiary operated with grossly inadequate capital, the parent pays salaries and other expenses of subsidiary, the subsidiary receives no business except that given by the parent, the parent uses the subsidiary's property as its own, the daily operations of the two corporations are not kept separate, and the subsidiary does not observe corporate formalities. Here, the TCC asserts there is common beneficial and actual ownership, common directors and officers, the parent finances the subsidiary, the Debtor was grossly undercapitalized at its inception, and the Debtor has no business functions. The alter ego doctrine may impose all the Debtor's liabilities on the company's owner.

EXHIBIT C

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF ST. CLAIR

---

PEOPLE OF THE STATE OF MICHIGAN,

               Plaintiff,

v.

MOSES RABBIT KIRSCHKE,

               Defendant.

Case No.'s 06-258-FC & 06-294-FC

Hon. Daniel J. Kelly

---

## AFFIDAVIT OF FACT

I, Moses R. Kirschke, duly swear, depose, and state:

1. I have some form of "Autism & ADHD disorder." And have a hard time conveying information & organizing information. Which takes <u>alot</u> of time (2 hours sometimes just to arrange (2) paragraphs clearly). I just barely passed the 8th grade.[2] And had little education up until the last recent 5 years. And I have also a hard time concentrating too. Noise, people talking, music, birds chirping outside, all completely disrupt my train of thought.

~~2. I didn't know and was completely unaware that the Michigan Court of Appeals retained and kept a distinctly separate "Register of Actions" for cases filed in their court. Aside from Lower Trial Circuit Courts. Which a prisoner thats about to be exonerated informed me about in August of 2022.~~

3. And further, understanding and comprehending and researching the law... in prison is <u>very hard</u> with all of the barriers. And it is an extremely complex, complicated, & monumental task. An extraordinary feat for any layperson --even with a formal & college education and the internet capabilities available out in the world.

-1-

I declare that the above is true to the best of my knowledge, understanding, and belief.

Date: August 14th 2025

_Moses R. Kirschke #384285_

Moses R. Kirschke #384285

MARY LOU KALAT
NOTARY PUBLIC, STATE OF MI
COUNTY OF SHIAWASSEE
MY COMMISSION EXPIRES Sep 18, 2025
ACTING IN COUNTY OF Jackson

_Mary Lou Kalat August 14, 2025_

---

[2] Which despite being given an GED at Saginaw Correctional Facility the scores were altered to pass me in order to obtain funding...

-2-

a.

EXHIBIT D

MK000190

# MICHIGAN DEPARTMENT OF CORRECTIONS - BUREAU OF HEALTH CARE SERVICES

PATIENT:                   Moses Kirschke
DATE OF BIRTH:             02/04/1979
DATE:                      02/09/2016 7:14 AM
VISIT TYPE:                Provider Visit-scheduled

## Chief Complaint/Reason for visit:

This 37 year old male presents with annual health screen and cardiovascular.

## History of Present Illness

### 1. Annual Health Screen

Additional comments:
Pt states that father died at age 52, his medical history consisted of heart disease, colon cancer. Pt was seen in Dec and had reported occ blood in stool, FOB screening at that time was negative. Denies constipation or diarrhea. Pt is very concerned about having either of these.

### 2. Cardiovascular

Additional comments:
Pt c/o intermittent CP since summer 2015, had episode in summer, then Oct, Nov and just before Christmas. Pt has noticed that anxiety/anger brings on episodes. Pain was localized at center chest and last about 30 minutes, no radiation. Did have mild dyspnea with the episode. Denies any vision changes, dizziness, edema, abd pain, reflux, n/v, epistaxis.. Has occ HA, no chronic. Pt has had fatigue for the past couple years, just had a work up for anemia, which showed iron deficiency and B12 level is at low end of normal. Lipids Sept 2015 WNL.

Pt has had occ episodes of night sweats, 1-2 times monthly, denies cough. TB test negative, relates to stress.

Pt does not currently have any chronic care. Does have an issue with his scalp which no creams have helped. Has burning pain on mid scalp and points to dermatome V1. h/o chronic rash and infection in this area which have cleared, but continues to have burning sensation constantly. With review of records in 2013, pt had blisters on scalp, diagnosis was seborrheic keratosis, which biopsy had ruled this out. Culture was positive for small amounts of 2 bacterium, one staph, pt was treated on multiple antibiotics. With rash being dermatomal, h/o blisters, pain/burning sensation, postherpatic neuralgia is a possible differential.

## Chronic Problems

Frequency, urinary

## Allergies

Reviewed, no changes.

| Allergen/Ingredient | Brand | Reaction: |
|---|---|---|
| Penicillins | | |
| Dextrose 5 % In Water | | |

Kirschke, Moses

384285

02/04/1979

3.

MK000189

# MICHIGAN DEPARTMENT OF CORRECTIONS

## NURSE PROTOCOL

### SITE: KCF
### COMPLETED BY: Denny Miller, RN      02/04/2016 8:08 AM

| Status | Order | Reason | Date |
|---|---|---|---|
| ordered | MP RNR Continued scalp pain/burning. States no Rx'd creams have helped. | | 02/05/2016 |
| completed | Sick call if symptoms do not subside or become more severe | | |
| completed | Patient education provided | | |
| completed | Ambulation | | 02/04/2016 |
| completed | Increase fluid intake | | 02/04/2016 |
| completed | Increase activity level | | 02/04/2016 |
| completed | Patient was reassured | | 02/04/2016 |
| completed | Follow exercise program | | 02/04/2016 |
| completed | Avoid scratching scalp | | 02/04/2016 |
| completed | Patient education provided and patient voiced understanding | | 02/04/2016 |
| completed | Wash hair daily | | 02/04/2016 |

Document generated by: Denny Miller, RN 02/04/2016 8:27 AM
Provider: Tara M. Weist NP

NAME: Kirschke, Moses
NUMBER: 384285
D.O.B.: 02/04/1979

MK000193

# MICHIGAN DEPARTMENT OF CORRECTIONS - BUREAU OF HEALTH CARE SERVICES

PATIENT:               Moses Kirschke
DATE OF BIRTH:         02/04/1979
DATE:                  03/04/2016 8:56 AM
VISIT TYPE:            Provider Visit-scheduled

## Chief Complaint/Reason for visit:

This 37 year old male presents with hematology/immunology-iron/b12y, neurologic-postherpetic neuralgia and musculoskeletal-chest pain.

## History of Present Illness

### 1. Hematology/Immunology-Iron/B12y  (follow-up)

Additional comments:

h/o low iron. CBC and iron studies WNL. Pt does have borderline low B12 and has c/o fatigue daily. Will supplement.

### 2. Neurologic-Postherpetic neuralgia  (follow-up)

Additional comments:

Pt continues to have burning pain sensation top of scalp, reviewed the prior hx in chart of initially have a rash with blisters and pt confirmed. Discussed the possibility of postherpetic neuralgia and pt given a handout. With the documented hx this fits. Skull xray was normal. Tegretol is NF for use outside of seizures and pt does not wish to come to medline. Will check into topical remedies. Pt given handout on postherpetic neuralgia. Pt did have chicken pox as a child.

### 3. Musculoskeletal-chest pain  (follow-up)

Additional comments:

Pt presents for f/u after having episode of chest pain on 3/2/16 when he was bending over washing hair in sink. Was seen by Dr Bonefeld that day and determined noncardiac. Pt has not had a repeated episode since. This has been long standing for pt. recent EKG NSR. Pt reassured. ,

## Chronic Problems

Frequency, urinary

## Allergies

| Allergen/Ingredient | Brand | Reaction: |
|---|---|---|
| Penicillins | | |
| Dextrose 5 % In Water | | |
| Levofloxacin | | |

## Vital Signs

| Date | Time | Height | Weight | Temp | Bp | Pulse | Resp. | Pulse Ox Rest | Pulse Ox Amb |
|---|---|---|---|---|---|---|---|---|---|
| 03/04/2016 | 8:21 AM | 72.0 | 191.0 | 98.5 | 111/58 | 72 | 16 | | |

Kirschke, Moses

384285

02/04/1979

5.

MK000194

FIO2   PeakFlow   Pain Score   Comments                                      Measured By
                                                                             Julie D. Hesselink, LPN

Physical Exam

Assessment/ Plan
Trigeminal neuralgia, postherpetic (053.12), Fair.
- ACMO placed for lidocaine cream.
Angina pectoris (413), Good.
- Resolved, monitor for changes in symptoms. Keep upcoming ccc appts
Deficiency, vitamin B NOS (266.9), Fair.
- supp x3 months.

Medications ordered this visit

| Start Date | Stop Date | Medication Name | Sig Desc |
|---|---|---|---|
| 03/04/2016 | 06/30/2016 | Vitamin B-12 1,000 mcg/mL injection solution | Inject 1ml monthly x3 months. |

Office Services

| Status Value | ApptDate | Timeframe | Order | Reason | Interpretation |
|---|---|---|---|---|---|
| ordered | 06/07/2016 | | Chart Review/Update : Rev B12 lab | | |
| ordered | 03/09/2016 | | Nurse Visit : B12 injection monthly x3. | | |

Instructions / Education

| Status | Completed | Order | Reason |
|---|---|---|---|
| completed | 03/04/2016 | Take new medication as prescribed | |
| completed | 03/04/2016 | Patient was reassured | |
| completed | 03/04/2016 | Patient education provided and patient voiced understanding | |

Lab Studies

| Status Comments | Lab Code | Lab Study | Timeframe | Date |
|---|---|---|---|---|
| ordered | VB12 | VITAMIN B 12 | | 06/01/2016 |

Document generated by: Tara M. Weist, NP 03/04/2016 5:24 PM

Kirschke, Moses

384285

02/04/1979

EXHIBIT E

MK000487



**Diseases and Conditions**

# Postherpetic neuralgia

By Mayo Clinic Staff

Postherpetic neuralgia (post-hur-PET-ik noo-RAL-juh) is a complication of shingles, which is caused by the chickenpox (herpes zoster) virus. Postherpetic neuralgia affects nerve fibers and skin, causing burning pain that lasts long after the rash and blisters of shingles disappear.

The risk of postherpetic neuralgia increases with age, primarily affecting people older than 60. There's no cure, but treatments can ease symptoms. For most people, postherpetic neuralgia improves over time.

The signs and symptoms of postherpetic neuralgia are generally limited to the area of your skin where the shingles outbreak first occurred — most commonly in a band around your trunk, usually on one side of your body. However postherpetic neuralgia is also common in people whose shingles occurred on the face.

Signs and symptoms may include:

- **Pain that lasts 3 months or longer** after the shingles rash has healed. The associated pain has been described as burning, sharp and jabbing, or deep and aching.
- **Sensitivity to light touch.** People with the condition often can't bear even the touch of clothing on the affected skin (allodynia).
- **Itching and numbness.** Less commonly, postherpetic neuralgia can produce an itchy feeling or numbness.

## When to see a doctor

See a doctor at the first sign of shingles. Often the pain starts before you notice a rash. **Your risk of developing postherpetic neuralgia is lessened if you begin taking antiviral medications within 72 hours of developing the shingles rash.**

Once you've had chickenpox, the virus remains in your body for the rest of your life. As you age or if your immune system is suppressed, such as from medications or chemotherapy, the virus can reactivate, causing shingles.

Postherpetic neuralgia occurs if your nerve fibers are damaged during an outbreak of shingles. Damaged fibers can't send messages from your skin to your brain as they normally do. Instead, the messages become confused and exaggerated, causing chronic, often excruciating pain that can last months — or even years.

When you have shingles, you might be at greater risk of developing postherpetic neuralgia as a result of:

- **Age.** You're older than 50
- **Severity of shingles.** You had a severe rash and severe pain
- **Other illness.** You have a chronic disease, such as diabetes
- You had shingles on your face or torso

Depending on how long postherpetic neuralgia lasts and how painful it is, people with the condition can develop:

- Depression
- Fatigue
- Difficulty sleeping
- Lack of appetite
- Difficulty concentrating

You might start by seeing your family doctor. He or she may refer you to a nerve specialist (neurologist) or a doctor who specializes in the treatment of chronic pain.

Here's information to help you get ready for your appointment.

## What you can do

When you make the appointment, ask if there's anything you need to do in advance, such as fasting before a specific test. Make a list of:

- **Your symptoms,** including any that seem unrelated to the reason for your appointment
- **Key personal information,** including major stresses, recent life changes and family medical history
- **All medications, vitamins or other supplements** you take, including the doses
- **Questions to ask your doctor**

Take a family member or friend along, if possible, to help you remember the information you're given.

MK000488

For postherpetic neuralgia, some basic questions to ask your doctor include

- What's likely causing my symptoms?
- What else could cause my symptoms?
- What tests do I need?
- Is my condition likely temporary or chronic?
- What's the best course of action?
- What are the alternatives to the primary approach you're suggesting?
- I have other health conditions. How can I best manage them together?
- Are there restrictions I need to follow?
- Should I see a specialist?
- Are there brochures or other printed material I can have? What websites do you recommend?

Don't hesitate to ask other questions

## What to expect from your doctor

Your doctor is likely to ask you several questions, such as

- When did your symptoms begin?
- Have your symptoms been continuous or occasional?
- How severe are your symptoms?
- Have you had chickenpox? When?
- What, if anything, seems to improve your symptoms?
- What, if anything, appears to worsen your symptoms?

Your doctor will examine your skin, possibly touching it in places to determine the borders of the affected area

In most cases, no tests are necessary

No single treatment relieves postherpetic neuralgia in all people. In many cases, it takes a combination of treatments to reduce the pain

## Lidocaine skin patches

These are small, bandage-like patches that contain the topical, pain-relieving medication lidocaine. These patches can be cut to fit only the affected area. You apply the patches, available by prescription, directly to painful skin to deliver temporary relief

## Capsaicin skin patch

A high concentration of an extract of chili peppers (capsaicin) is available as a skin patch to relieve pain. Available only in your doctor's office, the patch is applied by trained personnel after using a numbing medication on the affected area. The process takes at least two hours, but a single application is effective in decreasing pain for some people for up to three months. If effective, the application can be repeated every three months

## Anticonvulsants

Certain anti-seizure medications, including gabapentin (Neurontin, Gralise) and pregabalin (Lyrica), can lessen the pain of postherpetic neuralgia. These medications stabilize abnormal electrical activity in your nervous system caused by injured nerves. Side effects of these drugs include drowsiness, unclear thinking, unsteadiness and swelling in the feet

## Antidepressants

Certain antidepressants — such as nortriptyline (Pamelor), duloxetine (Cymbalta) and venlafaxine (Effexor XR) — affect key brain chemicals that play a role in both depression and how your body interprets pain. Doctors often prescribe antidepressants for postherpetic neuralgia in smaller doses than they do for depression alone

Common side effects of these medications include drowsiness, dry mouth, lightheadedness and weight gain

## Opioid painkillers

Some people may need prescription-strength pain medications containing tramadol (Ultram, Conzip), oxycodone (Percocet, Roxicet, Xartemis XR) or morphine. Opioids can cause mild dizziness, drowsiness, confusion and constipation. They can also be addictive. Although this risk is generally low, discuss it with your doctor

Tramadol has been linked to psychological reactions, such as emotional disturbances and suicidal thoughts. Opioid medications should not be combined with alcohol or other drugs and may impair your ability to drive

## Steroid injections

Steroids are sometimes injected into the spine (intrathecal) for postherpetic neuralgia. However, evidence of effectiveness is inconsistent. A low risk of serious side effects, including meningitis, has been associated with their use

You may find that the following over-the-counter medications ease the pain of postherpetic neuralgia

8.

MK000489

- **Capsaicin.** Capsaicin cream, made from the seeds of hot chili peppers, may relieve pain from postherpetic neuralgia. Capsaicin (Capzasin-P, Zostrix) can cause a burning sensation and irritate your skin, but these side effects usually disappear over time. Because capsaicin cream can irritate your skin, avoid getting it on unaffected parts of your body. Follow instructions, including wearing gloves for application and washing your hands thoroughly after applying.

- **Topical analgesics and anesthetics.** Aspirin mixed into an absorbing cream or nonprescription-strength lidocaine cream may reduce skin hypersensitivity.

The herpes zoster vaccine (Zostavax) has been shown to greatly decrease the risk of shingles. The vaccine is approved by the Food and Drug Administration for adults age 50 and older and is recommended for all adults 60 and older who aren't allergic to the vaccine and who don't take immune-suppressing medications.

## References

1. Bajwa ZH, et al. Postherpetic neuralgia. http://www.uptodate.com/home. Accessed Sept. 1, 2015.

2. Tseng HF, et al. Zoster vaccine and the risk of postherpetic neuralgia in patients who developed herpes zoster despite having received the zoster vaccine. Journal of Infectious Diseases. In press. Accessed Sept. 1, 2015.

3. Johnson RW, et al. Postherpetic neuralgia. The New England Journal of Medicine. 2014;371:1526.

4. Dubinsky RM, et al. Practice parameter: Treatment of postherpetic neuralgia. American Academy of Neurology. 2004;63:959.

5. Sampathkumar P, et al. Herpes zoster (shingles) and postherpetic neuralgia. Mayo Clinic Proceedings. 2009;84:274.

6. Important drug warning. U.S. Food and Drug Administration. http://google2.fda.gov/search?
q=cache:EKB1SS0qgzQJ:www.fda.gov/downloads/safety/medwatch/safetyinformation/safetyalertsforhumanmedicalproducts/ucm213286.pdf+tramadol+suicide+risk&client=FDAgov&site=FD
-8&access=p&oe=UTF-8. Accessed Sept. 3, 2015.

Sept. 16, 2015

Original article: http://www.mayoclinic.org/diseases-conditions/postherpetic-neuralgia/basics/definition/con-20023743

Any use of this site constitutes your agreement to the Terms and Conditions and Privacy Policy linked below.

Terms and Conditions
Privacy Policy
Notice of Privacy Practices

Mayo Clinic is a not-for-profit organization and proceeds from Web advertising help support our mission. Mayo Clinic does not endorse any of the third party products and services advertised.

Advertising and sponsorship policy
Advertising and sponsorship opportunities

A single copy of these materials may be reprinted for noncommercial personal use only. "Mayo," "Mayo Clinic," "MayoClinic.org," "Mayo Clinic Healthy Living," and the triple-shield Mayo Clinic logo are trademarks of Mayo Foundation for Medical Education and Research.

© 1998-2016 Mayo Foundation for Medical Education and Research. All rights reserved.

EXHIBIT F

# MICHIGAN DEPARTMENT OF CORRECTIONS - BUREAU OF HEALTH CARE SERVICES

MK000112

PATIENT:                     Moses Kirschke
DATE OF BIRTH:               02/04/1979
DATE:                        11/06/2014 1:38 PM
VISIT TYPE:                  Provider Visit-scheduled

### Chief Complaint/Reason for visit:

This 35 year old male presents with integumentary.

### History of Present Illness

**1. Integumentary**

Additional comments:

H/O persistent, chronic, intermittent, erythematous, scaly, and inflammed entire scalp (see pictures EHR 9/3/14), S/P biopsy (on 11/15/14) w/c showed: Heavy dermal and perifollicular inflammation. Initial 407 sent on 8/26/14 w/ ATP for: Gram staining w/c showed: +4 gram (+) cocci and +1 gm (-) bacilli; C&S w/c showed: Staph aureaus and Serratia marcesens. Fungal culture- Negative. Patient has been recalcitrant to topical corticosteroid, Ketoconazole, and intermittent antibiotics. C/O intermittent scalp pain and burning sensation, HA, trouble sleeping, and poor concentration.

### Chronic Problems

Frequency, urinary

### Allergies

| Allergen/Ingredient | Brand | Reaction: |
|---|---|---|
| Penicillins | | |

### Review of Systems

**Constitutional:**

Negative for chills/rigors, fatigue and fever.

**Respiratory:**

Negative for accelerated respirations, cough and dyspnea.

**Cardiovascular:**

Negative for chest pain and edema.

**Dermatologic:**

Kirschke, Moses

384285

02/04/1979

1/{#_OF_PAGES}

1c.

MK000110

## MICHIGAN DEPARTMENT OF CORRECTIONS

# MICHIGAN DEPARTMENT OF CORRECTIONS - BUREAU OF HEALTH CARE SERVICES

PATIENT: Moses Kirschke

DATE OF BIRTH:          02/04/1979

DATE:       10/15/2014 9:56 AM

VISIT TYPE:                 Individual Therapy

### Chronic Problems

Axis   Description

Frequency, urinary

### Allergies

Description

Penicillins

### Progress Note

| | |
|---|---|
| **Individual(s) Present:** | Prisoner and QMHP |
| **Duration of Contact:** | 20 - 30 minutes |
| **Change in Mental Status:** | No change. |
| **Change in stressors and/or supports of progress:** | No change. |
| **Treatment is necessary to:** | maintain or improve current level of functioning |
| **Therapeutic Interventions:** | assertiveness and interactive skill training, assist with problem solving, Cognitive |

Behavioral, stress management techniques, supportive,

**Comments:**

This non-mental health prisoner was seen in response to a kite. He reports concerns and difficulties with coping with ordinary demands of life and attributes this to increased nightmares, his adopted grandmother being placed on life support, and his frustrations with completing tasks. He was provided supportive therapy and meditation was recommended along with other therapeutic techniques to help with loss and grief and personal wellness.

When this prisoner entered the room he was appropriately dressed. His grooming needed attention but he looked the same as always. He made appropriate eye contact but did not smile. He presented as frustrated and slightly manic. No hallucinations, delusions or suicidal ideation was evident. Thought process was organized. He demonstrates the capacity to recognize reality. His current suicide risk is assessed as low.

### Mental Status

Sleeping problems exist. Other self-care problems: Associated with nightmares.

Patient's appearance is appropriate.

Patient is oriented to person, place, time and situation.

NAME: Kirschke, Moses

Inmate ID: 384285

D.O.B.: 02/04/1979

MK000071

### MICHIGAN DEPARTMENT OF CORRECTIONS

# MICHIGAN DEPARTMENT OF CORRECTIONS - BUREAU OF HEALTH CARE SERVICES

PATIENT: Moses Kirschke
DATE OF BIRTH:                02/04/1979
DATE:        07/01/2014 1:57 PM
VISIT TYPE:                Individual Therapy

## Chronic Problems
Axis   Description
        Frequency, urinary

## Allergies
Description
Penicillins

## Progress Note

| | |
|---|---|
| Individual(s) Present: | Prisoner and Therapist |
| Change in Mental Status: | No change. |
| Treatment is necessary to: | maintain or improve current level of functioning |
| Therapeutic Interventions: | assertiveness and interactive skill training, identifying relapse triggers, supportive, |

Comments:

This prisoner was seen for individual therapy. He reports great difficulties with sleep indicating that he sleeps less than 3.5 hours each night. He further reports large amount of awake time stating, "I haven't slept since yesterday and it feels like I won't sleep later either". He reports feeling overly happy for an extended period of time with increased levels of irritability. This prisoner was originally referred from health care due to concerns with depression. When asked he reports long periods of hopelessness, decreased energy and a decreased appetite. He also reports "feeling like a total failure and having thoughts of suicide but indicating he would not carry them out. When asked more about these thoughts he added that he devised plans in his mind. Finally, he reports feel so sad or unhappy that he can't stand it.

When this prisoner entered the room he appeared disheveled. When he made eye contact he was void of emotion and he did not smile. He presented as depressed, hopeless and without energy. There is current evidence of a major thought or mood disorder. Prisoner appears to be currently emotionally stable but with signs of impaired judgment. His affect presents as appropriate to the conversation. Thought process organized. He demonstrates the capacity to recognize reality and appears to be coping with ordinary demands of life. He is effectively performing and maintaining ADL's. His current suicide risk assessed as low. Prisoner is not currently homicidal. He was oriented.

## Mental Status
Sleeping problems exist.
Patient's appearance is disheveled.

NAME: Kirschke, Moses
Inmate ID: 384285
D.O.B.: 02/04/1979

MK000072

## MICHIGAN DEPARTMENT OF CORRECTIONS

Patient is oriented to person, place, time and situation.

Behavior is described as limp.

Psychomotor behaviors are unremarkable.

Speech is soft.

Patient's affect is flat.

Patient's mood is depressed.

Memory is intact.

Sensorium is clear consciousness.

Patient's intellect is average.

Attitude is cooperative and hopeless.

Attention is gained and maintained.

Reasoning is poor.

Impulse control is fair.

Judgment is poor.

Insight is poor.

Patient's self-perception is realistic.

Thought processes are logical.

The patient does not express suicidal ideation.

The patient does not express homicidal ideation.

### Clinical Assessment

**Axis I and Axis II:**

Axis I  Cannabis Abuse (305.20)

Axis I  Alcohol Abuse Unspec (305.00)

Axis II Personality Disorder, NOS (301.9)

**Axis IV:** Moderate

Problems related to:

      legal system/crime

**Axis V:**

Current GAF: 55 on 07/01/2014.

### Orders/Plan

**Specific Plan Instructions**

Schedule for an intake.

refer to psychiatrist.

Provider: **Robert T. McQueeney MD**

Document generated by: **Stephanie Doran, LLMSW**

NAME:  Kirschke, Moses      13.
Inmate ID: 384285
D.O.B.:  02/04/1979

*Clerk's Office -*
*Copy without*
*Exhibits*

## CERTIFICATE OF SERVICE

I, Moses R. Kirschke, duly swear that on March 24th 2026, I mailed by U.S. Mail to the Office of the Clerk for the U.S. Eastern District Court of Michigan for filing in Case No. 2:19-cv-13788, an Original & a Copy of Plaintiff's 1 Page Letter to the Court/Magistrate Judge Patti overseeing the Case Regarding recent "Negative Extraordinary Unprecedented Circumstances... Necessitating the Appointment of Counsel" with attached Exhibits A-F for Judge Patti's Original. And mailed 1 Copy to Adam P. Sadowski P 73864 at 30217, P.O. Box, Lansing, Michigan 48909./

Date: March 24th 2026

Moses R. Kirschke #384285

Moses R. Kirschke #384285
Newberry Correctional Facility
13747 E. County Road 428
Newberry, Michigan 49868

March 25th 2026

Office of the Clerk for the
U.S. Eastern District Court of Michigan
231 W. Lafayette Blvd., Room 564
Detroit, Michigan 48226

Hon. Denise Page Hood

Hon. Mag. Anthony P. Patti

RE: Moses R. Kirschke v. Corizon Health Inc., et al., Case No. 2:19-cv-13788, & "New" Negative Circumstances

/Extraordinary Unprecedented Circumstances Necessitating the Appointment of Pro.Bono Counsel............

Dear Clerk of the Court: Plaintiff respectfully motions the Court in the above case for Counsel due to "new" negative extraordinary unprecedented circumstances. Where after attempting to settle part of the case with Corizon & Corizon Defendants, releasing them from the case (ECF No. 189), they have reneged on the bankruptcy settlement plan. (See Ex. A: Copy of 3-13-2026 Dickinson & Wright PLLC Letter). And the settlement plan & injunction has been terminated. By the U.S. Southern-North Bankruptcy Court of Texas. (See Notice attached to 3-13-2026 DW PLLC Letter)..Where now Plaintiff has approximately "2 months & 1 week--June 3rd 2026" to re-instate Corizon and the released defendants. Back into the case. Add present/former employees/officers of Corizon. And Corizon's "new" corporations: Yes Care & CHS TX as successor entities. And new claims. Such as fraudulent transfer & avoidance action claims under state law. (See Ex. B: P. 13 of Bank. Settlement Plan). Which is going to require extensive discovery, for discovery to be re-opened, and extended. For discovery of the identities of "new" defendants. And Counsel. Because Plaintiff is incarcerated. And defendants are in other states. And Dickinson & Wright is not going to help Plaintiff with the matters. (See P. 2 of 3-13-2026 Dickinson & Wright PLLC Letter).

And Plaintiff has "no experience" and the skills necessary to litigate and/or bring novel "new" state law claims in the case. In federal court. Relating to bankruptcy/state law & these extraordinary circumstances. Now before the Court. Not to mention also "re-opening discovery" for Corizon & and released defendants. And following up discovery with them. Which is another matter. Where in addition to that, multiple discovery requests were left hanging in the balance involving Corizon & the released defendants due to the bankruptcy Stay. (See ECF No.'s 128, 130, 139, 143, & 150). And will need to be ruled on by the Court. And discovery conducted on the "new" defendants. Once their identities are revealed through discovery. And further, Morell claims are complicated substantially fact-labor-intensive and extensive evidence gathering-based claims. Warranting the appointment of Counsel.

And Plaintiff has some form of "Autism & ADHD disorder." And has a hard time conveying & organizing information. (It takes 2 hours sometimes just to arrange & organize 2 paragraphs clearly). And barely passed the 8th Grade. (See Ex. C: Pl.'s Aff. of Fact). And Plaintiff also suffers from a condition known as "Postherpetic Neuralgia." Which affects his concentration. And was diagnosed for in 2016. And Plaintiff still suffers from today. (And is not being given any treatment for). (See Ex. D: Pl.'s 2-9-2016 & 3-4-2016 Medical Records; Ex. E: Printout Information on Postherpetic Neuralgia; & Ex. F: Pl.'s 11-6-2014, 10-15-2014, & 7-1-2014 Mental Health Records).. Which is at issue and Plaintiff was denied treatment for in this case by Corizon & the released defendants. (See ¶¶'s 338, 339, 340, 341, 342, 356, 360, 361, 362, 363, 364, 365, 366, 367, 368, 369, & 370 of Pl.'s Ver. Compl. at ECF No. 65). Which due to the unprecedented and "new" negative extraordinary circumstances, difficulties and substantial challenges Plaintiff faces... including his mental disabilities resulting from his scalp/medical condition & autism and/or ADHD disorder, Plaintiff respectfully asks this Court to consider and find Pro.Bono Counsel to represent him in the Case in accordance with the Criminal Justice Act & Eastern District Roster for Indigent civil rights claimants.

Plaintiff further declares that the attached exhibits are true and accurate copies under the penalty of perjury. 28 U.S.C. § 1746.

Sincerely/Respectfully Submitted

Moses R. Kirschke #384285

EXHIBIT A

EXHIBIT 8

EXHIBIT C

EXHIBIT D

EXHIBIT E

EXHIBIT F



## CERTIFICATE OF SERVICE

I, Moses R. Kirschke, duly swear that on March 26ᵗʰ 2026, I mailed by U.S. Mail to the Office of the Clerk for the U.S. Eastern District Court of Michigan for filing in Case No. 2:19-cv-13788, an Original & a Copy of Plaintiff's 1 Page Letter to the Court/Magistrate Judge Patti overseeing the Case Regarding recent "Negative Extraordinary Unprecedented Circumstances... Necessitating the Appointment of Counsel" with attached Exhibits A-F for Judge Patti's Original. And mailed 1 Copy to Adam P. Sadowski P 73864 at 30217, P.O. Box, Lansing, Michigan 48909.

Date: March 26ᵗʰ 2026

Moses R. Kirschke #384285

Moses R. Hirschko # 384285
Newberry Correctional Facility
13747 E. Co. Road 428
Newbury, Mi. 49868

FIRST-CLASS

US POSTAGE PITNEY BOWES

ZIP 49868 $ 003.56⁰
02 7M
0008040237 MAR 26 2026

Office of the Clerk
U.S. Eastern District Court for
the Southern Eastern District Michigan
231 W. Lafayette Blvd. Room 564
Detroit, Michigan 48226

RECEIVED
MAR 31 2026
CLERK'S OFFICE
U.S. DISTRICT COURT

U.S. MARSHALS